IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                              CRIMINAL ACTION NO. 2:05-cr-00040

DAVID A. HICKS,

                Defendant.

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant David Hicks's Emergency Motion for Compassionate Release pursuant to the First Step Act. [ECF No. 428]. For the reasons stated in this order, the Motion is **GRANTED**.

I.    Procedural Background

Mr. Hicks was convicted on several counts of production, receipt, and possession of child pornography in violation of 18 U.S.C. §§ 2251(b), 2252(a)(2), and 2252(a)(4)(B). [ECF No. 269]. On November 6, 2007, I sentenced Mr. Hicks to 360 months of imprisonment followed by a life term of supervised release. Mr. Hicks is currently incarcerated at Federal Medical Center, Butner, in North Carolina. FMC Butner is a medical referral center that treats male inmates with significant medical conditions that standard federal prisons are not equipped to handle.

In February 2021, Mr. Hicks filed an Emergency Motion for Compassionate Release. [ECF No. 415]. In that motion, Mr. Hicks stated that he was gravely ill with liver cirrhosis which would require a liver transplant to cure. In addition, Mr. Hicks stated that he was "unquestionably at a heightened risk for serious illness from COVID-19 because of liver failure." [ECF No. 415, at 7]. Mr. Hicks claimed that he had made a request for compassionate release to the warden at FMC Butner, but the request had gone unanswered. The Government responded and advised me that officials at FMC Butner represented to the Government that they had no record of Mr. Hicks making an administrative request for release. [ECF No. 416]. Therefore, despite Mr. Hicks's representations that he had made an administrative request, I denied his Emergency Motion without prejudice because I could find no documentary support to demonstrate that he had exhausted his remedies within the Bureau of Prisons. [ECF No. 418]. As explained below, it is now clear that Mr. Hicks had, in fact, made an administrative request for a reduction in sentence because the warden of FMC Butner denied his request on August 26, 2021. [ECF No. 428-2, at 2].

On September 1, 2021, I received a letter from James Craven, the attorney representing Mr. Hicks at the time, that I construed as a Renewed Motion for Compassionate Release. [ECF No. 422]. In that letter, Mr. Craven stated that Mr. Hicks was terminally ill due to his liver cirrhosis and had less than a year to live. He asked that I immediately release Mr. Hicks to his mother's home, under appropriate monitoring conditions, so that he could spend his final days with his

family. I received a letter from Shirley Hicks, Mr. Hicks's mother, requesting the same, due to the severity and terminal nature of her son's medical condition. [ECF No. 424]. She further stated she was willing to comply with any conditions of release implemented by the court without objection. The Government responded to the Motion, acknowledging that Mr. Hicks suffers from serious medical conditions, but arguing that this was not an extraordinary and compelling reason to grant compassionate release and that Mr. Hicks was still a danger to the community. [ECF No. 425, at 2]. Ultimately, because Mr. Craven claimed that his letter was merely an informal inquiry to the court and was unable to timely complete the *pro hac vice* admission process, I denied the Motion as moot. [ECF No. 427].

The instant motion was filed on December 15, 2021. [ECF No. 428]. Mr. Hicks alleges that his liver cirrhosis is end-stage and that his condition continues to deteriorate. He states that his medical conditions have debilitated him to the point of being unable to walk farther than 150 feet. On December 17, 2021, I ordered Mr. Hicks's attorney to produce medical records to support his claims about the severity of Mr. Hicks's condition. [ECF No. 429]. Those records were filed on January 6, 2022. [ECF No. 430]. At this time, Mr. Hicks has been incarcerated for nearly 16 years. [ECF No. 428-4, at 3].

## II. DISCUSSION

In deciding motions for compassionate release under the First Step Act, I will consider the following: (1) whether the defendant has exhausted his administrative

remedies; (2) whether the defendant has demonstrated "extraordinary and compelling reasons," and; (3) the factors listed in 18 U.S.C. § 3553(a).

### a. Exhaustion of administrative remedies

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Before they can make such requests, defendants must ask the BOP to do so on their behalf and give the BOP thirty days to respond. *See* § 3582(c)(1)(A). Upon such a motion from the BOP or from a defendant (after the BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment." § 3582(c)(1)(A)(i).

Mr. Hicks attached as an exhibit to the instant motion a letter from the warden of FMC Butner, dated August 26, 2021, denying Mr. Hicks's administrative request for a reduction in sentence. [ECF No. 428-2, at 2]. The warden conceded that Mr. Hicks meets the medical criteria for a reduction in sentence because he is "suffering from a terminal condition with a reduced life expectancy." *Id.* The warden denied his request for a sentence reduction, however, due to the warden's impression that there was no viable release plan in place for Mr. Hicks. Because Mr. Hicks has made an administrative request for compassionate release that was then denied, I **FIND** that he has exhausted his administrative remedies.

### b. Extraordinary and compelling reasons to modify the sentence

Once an inmate has satisfied the administrative exhaustion requirement, a court may reduce his sentence upon a finding of "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). The Fourth Circuit has clarified that district courts are not bound by the enumerated extraordinary and compelling reasons listed in U.S. Sentencing Guidelines section 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to §1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."). "District Courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). In sum, I have the broad authority to consider any relevant factors that I find to be extraordinary and compelling.

Despite the wide construction of "extraordinary and compelling" that is set out in *McCoy*, the U.S. Sentencing Guidelines Manual's policy statement on compassionate release is a useful guidepost. The policy statement provides that

5

extraordinary and compelling reasons generally exist when the defendant is "suffering from a terminal illness." U.S.S.G. §1B1.13, comment. (n.1(A)(i)); *see also Bart v. Reherman*, No. 1:19-cv-00245, 2020 U.S. Dist. LEXIS 110474, *18 (S.D. W. Va. April 8, 2020). In fact, a terminal prognosis—defined as "a serious and advanced illness with an end of life trajectory"—tops the list of circumstances defining extraordinary and compelling reasons for release. *See* U.S.S.G. §1B1.13, comment. (n.1(A)(i)).

In this case, the extraordinary and compelling circumstance that demands an immediate modification of Mr. Hicks's sentence is that he is terminally ill. In his Response to the Government's Opposition to his Emergency Motion for Compassionate Release, he stated that his BOP doctor informed him that short of a total liver transplant, for which he is currently ineligible, his illness is fatal. [ECF No. 417, at 2]. According to his hematologists, at this stage, his cryptogenic liver cirrhosis is incurable, and only his symptoms can be treated. This condition has resulted in several other chronic medical issues, including hepatic encephalopathy, choledocholithiasis, and, at times, sepsis. [ECF No. 430]. In addition to liver cirrhosis, Mr. Hicks has a history of esophageal and gastric varices, portal vein thrombosis, and persistent biliary strictures, all of which contribute to his overall poor health prognosis. These conditions, with their accompanying symptoms and side effects, leave Mr. Hicks all but incapacitated.

Mr. Hicks, his mother, and his attorney have represented to the court that he is nearing death because of his failing liver and chronic medical conditions. Neither

the Government nor the warden of FMC Butner dispute that Mr. Hicks's condition is terminal. Without modification of his sentence, he will not be eligible for home detention until April of 2031. Given that his best prognosis gives him no more than a year to live, it is a virtual certainty that he will die in prison if his sentence is not reduced.

Due to the severity of Mr. Hicks's illness, I **FIND** that extraordinary and compelling reasons exist to modify his sentence. Mr. Hicks is in a state of severely declining health and may not survive additional time in prison. Compassion compels this result, and this finding is in line with my earlier rulings. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D. W. Va. June 12, 2020) (granting compassionate release to a defendant who was suffering from a severe form of Hepatitis C).

### c. 18 U.S.C. § 3553(a) Factors

The First Step Act requires that I consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether to grant and in fashioning relief. *See* 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) requires that a sentence be

> sufficient, but not greater than necessary, to . . . reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

When a court grants a sentence modification under 18 U.S.C. § 3582(c)(1)(A), the court may "modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment.'" *United States v. Alvarado*, No. 18-CR-283 (NEB/TNL), 2020 WL 3041504, at *2 (D. Minn. May 27, 2020) (citing U.S.S.G. §5F1.2; 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release")).

Mr. Hicks has been in prison for over 15 years. Undoubtedly, Mr. Hicks's history of being a producer of child pornography represents a potential danger to his community. His past conduct is nothing short of despicable. However, keeping Mr. Hicks incarcerated in his final months when he is terminally ill, especially during the COVID-19 pandemic, does not promote respect for the law or help deter others from criminal conduct. Rather, it would amount to a punishment more severe than that contemplated at sentencing and more than necessary to reflect the seriousness of the offense. *See United States v. Kibble,* 992 F.3d 326, 335 (4th Cir. 2021) (explaining that conditions of incarceration during the COVID-19 pandemic are qualitatively different than those contemplated before the pandemic) (Gregory, C.J., concurring).

The United States Probation Office has advised me that monitoring Mr. Hicks while he receives medical care in a hospital setting presents difficulties.

8

While I recognize there are challenges associated with supervising someone in Mr. Hicks's condition, I find that the implication that Mr. Hicks is too ill to be granted compassionate release directly contravenes the policy behind the law. Given the debilitating nature of Mr. Hicks's condition, as well as the conditions placed on his release, the public will be protected from future crimes by Mr. Hicks.

Though I find that Mr. Hicks should be granted release, I am not allowing Mr. Hicks to reintegrate himself into the community. Rather, I am reducing Mr. Hicks's term of incarceration within the BOP to **TIME SERVED** and ordering that the first **10 years** of Mr. Hicks's lifetime term of supervised release are to be served on home incarceration. I find that the period of home incarceration is a substitute for his remaining period of incarceration in the BOP.

### III.  Conclusion

Defendant's Emergency Motion for Compassionate Release [ECF No. 428] is **GRANTED**. Mr. Hicks's term of imprisonment is **modified to TIME SERVED.** I previously imposed a lifetime term of supervised release. I **ORDER** that **the first 10 years of that supervised release are to be served on strict home incarceration**. Mr. Hicks is to be released **IMMEDIATELY** by the BOP to the Southern District of West Virginia where he will be confined at 38 Jericho Drive, Charleston, West Virginia 25311.

During the period of home incarceration, Mr. Hicks is restricted to 24-hour lock-down at his residence except for medical necessities, court appearances, or other activities specifically approved by the court. Probation is to monitor Mr. Hicks

to the fullest extent practicable. All non-emergency medical appointments must receive prior approval from the Probation Office, and any emergency that requires Mr. Hicks to leave his residence is to be reported to Probation as early as possible. Mr. Hicks shall comply with all conditions of supervised release imposed in his 2007 sentence. [ECF No. 269, at 3–4].

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, the United States Marshal, and FCI Butner at Old North Carolina Highway 75, Post Office Box 1600, Butner, NC 27509.

ENTER: January 14, 2022

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE